IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MASSACHUSETTS LABORERS' HEALTH & WELFARE FUND, on behalf of itself and others similarly situated,<br><br>       *Plaintiff*,<br><br>  v.<br><br>BOEHRINGER INGELHEIM PHARMACEUTICALS, INC. and BOEHRINGER INGELHEIM INTERNATIONAL GMBH,<br><br>       *Defendants*. | Case No. 1:24-cv-10565 |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS AMENDED COMPLAINT**

## Table of Contents

Page

I.    INTRODUCTION ................................................................................................. 1

II.   BACKGROUND ................................................................................................. 4

    A.   FDA Approval and The Hatch-Waxman Process ............................................. 4

    B.   Boehringer Obtains Approval of Combivent Respimat and Spiriva Respimat Drugs ..... 6

    C.   Anobri Files ANDAs, And Boehringer Brings Suit........................................... 7

    D.   Plaintiff's Lawsuit ............................................................................................. 8

III.  ARGUMENT ....................................................................................................... 8

    A.   Plaintiff Does Not Allege Causation and Antitrust Injury ............................... 8

        1.    Plaintiff Must Plausibly Allege That But-For the Allegedly Anticompetitive Conduct, It Would Not Have Been Harmed. ..... 8

        2.    Plaintiff Does Not Allege That Any Generic Firm Could Have Launched Without Infringing Boehringer's Patents ..... 9

        3.    Plaintiff Does Not Allege Any Generic Was Prepared To Enter, Let Alone Launch "At Risk" ..... 11

    B.   Plaintiff Fails to Plausibly Plead that Boehringer Engaged in Sham Litigation ........... 13

        1.    The Orange Book Listings Are Not Necessary For "Standing" ........................... 14

        2.    Boehringer's Suits Against Anobri Are Protected by *Noerr-Pennington*............. 15

    C.   Plaintiff Has Failed To Plead Many Of Its State Law Claims ......................................... 18

        1.    Defectively Pleaded State Law Antitrust Claims................................................... 19

        2.    Defectively Pleaded Consumer Protection Claims .............................................. 19

        3.    Defectively Pleaded Unjust Enrichment Claims................................................... 20

IV.   CONCLUSION..................................................................................................... 20

**Table of Authorities**

Page(s)

**Cases**

*Abbott Labs. v. Zenith Labs., Inc.*,
    1995 WL 117984 (N.D. Ill. Mar. 16, 1995)........................................................................15

*Adobe Sys. Inc. v. Coffee Cup Partners, Inc.*,
    2012 WL 3877783 (N.D. Cal. Sept. 6, 2012) .................................................................19

*AES Puerto Rico, L.P. v. Trujillo-Panisse*,
    133 F. Supp. 3d 409 (D.P.R. 2015)................................................................................16

*Allen Eng'g Corp. v. Bartell Indus., Inc.*,
    299 F.3d 1336 (Fed. Cir. 2002).................................................................................4, 18

*Andrx Pharms., Inc. v. Biovail Corp.*,
    276 F.3d 1368 (Fed. Cir. 2002)......................................................................................18

*Apotex, Inc. v. Thompson*,
    347 F.3d 1335 (Fed. Cir. 2003)...............................................................................4, 5, 18

*In re Asacol Antitrust Litig.*,
    2016 WL 4083333 (D. Mass. July 20, 2016).............................................................6, 9, 20

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).......................................................................................................19

*AstraZeneca Pharms. LP v. Apotex Corp.*,
    669 F.3d 1370 (Fed. Cir. 2012)...............................................................................3, 14, 15

*In re Atlas Roofing Corp. Chalet Shingle Prod. Liab. Litig.*,
    2018 WL 2929831 (N.D. Ga. June 8, 2018) .................................................................20

*Aventis Pharma S.A. v. Amphastar Pharms., Inc.*,
    2009 WL 8727693 (C.D. Cal. Feb. 17, 2009).................................................................12

*Bower v. Int'l Bus. Machines, Inc.*,
    495 F. Supp. 2d 837 (S.D. Ohio 2007) .........................................................................21

*Breiding v. Eversource Energy*,
    344 F. Supp. 3d 433 (D. Mass. 2018) ...........................................................................9

*Bristol-Myers Squibb Co. v. Copley Pharm., Inc.*,
    144 F. Supp. 2d 21 (D. Mass. 2000) .....................................................................3, 6, 13

*Caraco Pharm. Lab's, Ltd. v. Novo Nordisk A/S*,
    566 U.S. 399 (2012)..........................................................................................................5

*In re DDAVP Indirect Purchaser Antitrust Litig.*,
    903 F. Supp. 2d 198 (S.D.N.Y. 2012)...........................................................................21

*Eli Lilly & Co. v. Medtronic, Inc.,*
    496 U.S. 661 (1990) .............................................................................................5

*In re Flonase Antitrust Litig.,*
    692 F. Supp. 2d 524 (E.D. Pa. 2010) ...........................................................20, 21

*In re Gen. Motors LLC Ignition Switch Litig.,*
    257 F. Supp. 3d 372 (S.D.N.Y. 2017) .................................................................21

*Hecht v. Pro-Football, Inc.,*
    570 F.2d 982 (D.C. Cir. 1977) ......................................................................11, 12

*Hoffman v. Stamper,*
    843 A.2d 153 (Md. Ct. Spec. App. 2004), *rev'd in part on other grounds*, 867
    A.2d 276 (Md. 2005) ...........................................................................................20

*In re Humira (Adalimumab) Antitrust Litig.,*
    465 F. Supp. 3d 811 (N.D. Ill. 2020), *aff'd sub nom. Mayor & City Council of*
    *Baltimore v. AbbVie Inc.*, 42 F.4th 709 (7th Cir. 2022)....................................11, 16

*Indium Corp. of Am. v. Semi-Alloys, Inc.,*
    781 F.2d 879 (Fed. Cir. 1985) ..............................................................................11

*Iron Workers v. Teva,*
    2024 WL 2025572 (D. Mass. May 7, 2024) .....................................................19, 20

*Jazz Pharms., Inc. v. Avadel CNS Pharms., LLC,*
    60 F.4th 1373 (Fed. Cir. 2023) ............................................................................17

*In re Lantus Direct Purchaser Antitrust Litig.,*
    950 F.3d 1 (1st Cir. 2020)......................................................................................4

*Loestrin*, 410 F. Supp. 3d at 371 ..............................................................................20

*Mayor & City Council of Baltimore v. AbbVie Inc.,*
    42 F.4th 709 (7th Cir. 2022) ...................................................................10, 11, 17

*Miami Prod. & Chem. Co. v. Olin Corp.,*
    546 F. Supp. 3d 223 (W.D.N.Y. 2021) .................................................................19

*Nader v. The Democratic Nat. Comm.,*
    555 F. Supp. 2d 137 (D.D.C. 2008) ......................................................................19

*In re New Motor Vehicles Exp. Antitrust Litig.,*
    350 F. Supp. 2d 160 (D. Me. 2004) ......................................................................20

*In re Nexium (Esomeprazole) Antitrust Litig.,*
    842 F.3d 34 (1st Cir. 2016)............................................................................3, 9, 11

*In re Nexium (Esomeprazole) Antitrust Litig.,*
    968 F. Supp. 2d 367 (D. Mass. 2013) ...................................................................19

*Pietrantoni v. Corcept Therapeutics Inc.,*
    640 F. Supp. 3d 197 (D. Mass. 2022) ....................................................................6

*Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.* (*PRE*),
  508 U.S. 49 (1993) ................................................................................15, 16, 17, 18

*In re Ranbaxy Generic Drug Application Antitrust Litig.*,
  2019 WL 6341298 (D. Mass. Nov. 27, 2019) ......................................................20

*RSA Media, Inc. v. AK Media Grp., Inc.*,
  260 F.3d 10 (1st Cir. 2001) ....................................................................................9

*Sheet Metal Workers Loc. 441 Health & Welfare Plan v. GlaxoSmithKline, PLC*,
  737 F. Supp. 2d 380 (E.D. Pa. 2010) ...................................................................20

*In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*,
  2015 WL 5458570 (D. Mass. Sept. 16, 2015) ..........................................15, 16, 19

*In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*,
  2018 WL 563144 (D. Mass. Jan. 25, 2018) ............................................................9

*Stiftung v. Renishaw PLC*,
  945 F.2d 1173 (Fed. Cir. 1991)..............................................................................18

*Sullivan v. Nat'l Football League*,
  34 F.3d 1091 (1st Cir. 1994) ...................................................................................8

*Takeda Pharm. Co. v. TWi Pharms., Inc.*,
  2013 WL 12164680 (N.D. Cal. May 20, 2013) .............................................14, 15

*In re Terazosin Hydrochloride Antitrust Litig.*,
  335 F. Supp. 2d 1336 (S.D. Fla. 2004) .................................................................13

*Teva Pharms. USA, Inc. v. Abbott Lab'ys*,
  301 F. Supp. 2d 819 (N.D. Ill. 2004) ....................................................................15

*United Food & Com. Workers Unions Fund v. Novartis Pharms. Corp.*,
  902 F.3d 1 (1st Cir. 2018) .....................................................................................16

*Vanda Pharms. Inc. v. W.-Ward Pharms. Int'l Ltd.*,
  887 F.3d 1117 (Fed. Cir. 2018)..........................................................................5, 14

*In re Wellbutrin XL Antitrust Litig.*,
  133 F. Supp. 3d 734 (E.D. Pa. 2015) ....................................................................13

*In re Wellbutrin XL Antitrust Litig. Indirect Purchaser Class*,
  868 F.3d 132 (3d Cir. 2017)...............................................................................9, 13

## Statutes

21 U.S.C. § 355(b)(1) ......................................................................................................5

21 U.S.C. § 355(b)(1)(A)(viii) .......................................................................................5

21 U.S.C. § 355(d) ..........................................................................................................5

21 U.S.C. § 355(j)(2)(A)(vii)(III) ..................................................................................6

21 U.S.C. § 355(j)(2)(A)(vii)(IV) .................................................................................6

21 U.S.C. § 355(j)(3)(C) ...............................................................................................6

21 U.S.C. § 355(j)(5)(A) ...............................................................................................6

28 U.S.C. 1295(a)(1) ...................................................................................................17

Ind. Code § 24-5-0.5-4(a) ...........................................................................................20

Vt. Stat. Ann. tit. 9, § 2461 .........................................................................................20

Wyo. Stat. Ann. § 40-12-108 ......................................................................................20

## Other Authorities

COMBIVENT RESPIMAT, Approved Labeling, https://tinyurl.com/ycxw46ec ..........................6

FDA Approved Drug Products,
    https://www.accessdata.fda.gov/scripts/cder/ob/index.cfm ................................7, 12

SPIRIVA RESPIMAT, Approved Labeling, https://tinyurl.com/2359weux ................................6

## Rules

Fed. R. Civ. Proc. 11 ...................................................................................................17

## Regulations

21 C.F.R. § 314.100 .......................................................................................................6

21 C.F.R. § 314.105(d) ................................................................................................13

# I.    INTRODUCTION

Defendants Boehringer Ingelheim Pharmaceuticals, Inc. and Boehringer Ingelheim International GMBH (collectively, "Boehringer")[1] are pharmaceutical companies that develop and manufacture innovative drugs for patients suffering from a variety of conditions.  Plaintiff in this putative class action claims Boehringer delayed generic competition for two of its inhaler drugs, violating the antitrust laws.  But the Complaint fails on its face because Plaintiff does not—and cannot—claim that Boehringer's allegedly unlawful conduct prevented any competitor from bringing its own drugs to market.  Plaintiff's claims fail as a matter of law and should be dismissed.

This case is about an inhaler device Boehringer created known as "Respimat," and two FDA-approved Boehringer drugs that use the Respimat inhaler—Combivent Respimat and Spiriva Respimat.  These drugs are "combination" drugs, which are approved by the FDA as a combination of (1) a device (the Respimat inhaler) and (2) a compound (the Combivent and Spiriva compounds).  After Boehringer received FDA approval for its Combivent Respimat and Spiriva Respimat combination drugs, Boehringer submitted patents for both products covering its Respimat inhaler for inclusion in the "Orange Book"—a patent compendium, maintained by the FDA, which lists patents covering approved drugs.  The Orange Book gives generic drug manufacturers notice of what patents claim a drug, so they can easily determine which drugs are protected by unexpired patents.  Here, the Respimat patents protect the Respimat inhaler, and thus protect combination drug products that use that inhaler, such as Combivent and Spiriva Respimat.

Plaintiff claims that Boehringer suppressed generic competition by listing its Respimat patents in the Orange Book.  Plaintiff does *not* dispute that the patents are valid and cover the

---

[1] Although the two Defendants here are separate companies, Plaintiff treats them as one-and-the-same in its Complaint. While Defendants disagree with Plaintiff's disregard of corporate separateness, Defendants have adopted Plaintiff's approach solely for the purpose of this motion and to attack the allegations as they are pleaded.

Respimat inhaler.  But Plaintiff argues that "device" patents (as opposed to patents directed to pharmaceutical compounds) should never be listed in the Orange Book, even when the "device" at issue is part of an approved combination drug.  Plaintiff thus alleges that Boehringer's listing of its device patents was wrong, and this allegedly incorrect Orange Book listing damaged it in violation of the antitrust laws.  Plaintiff also alleges Boehringer has used its Orange Book listings to file two lawsuits in the District of New Jersey against a company (Anobri Pharmaceuticals) that filed Abbreviated New Drug Applications (or "ANDAs") asking the FDA for approval to make generic versions of Combivent Respimat and Spiriva Respimat.  Plaintiff alleges Boehringer's suits are an unlawful "sham," because, according to Plaintiff, listing patents in the Orange Book was necessary for Boehringer to have standing to sue.  Since Plaintiff asserts Boehringer's patents should not have been listed, it alleges Boehringer did not have standing to sue Anobri.

Plaintiff's arguments about Orange Book listing and its effect on lawsuit standing are incorrect.  But more importantly for this motion, these arguments simply do not matter:  According to Plaintiff's own complaint, the allegedly unlawful Orange Book listings and lawsuits have had no effect on competition.  Plaintiff's claims should be dismissed, for several reasons.

*First*, all the claims should be dismissed for failure to allege causation and antitrust injury. To establish these elements, Plaintiff must allege that a manufacturer would have brought generic Combivent Respimat and Spiriva Respimat to market in the absence of the Orange Book listings and lawsuits.  But even if Boehringer's Respimat patents had *not* been listed in the Orange Book, they would still prevent generic manufacturers from creating their own version of Combivent Respimat and Spiriva Respimat.  Plaintiff does not allege that all of Boehringer's patents are invalid or that a generic manufacturer could somehow bring generic Combivent Respimat and Spiriva Respimat to market without infringing those patents.  Nor does Plaintiff allege that any

company would have launched "at risk" of violating those patents; instead, it basically concedes that no company would have done so. Given that "a valid patent independently precludes competition," Plaintiff cannot allege that competition has been unlawfully suppressed when, even absent the alleged conduct, Boehringer's valid patents would preclude competitors from entering the market. *In re Nexium (Esomeprazole) Antitrust Litig*., 842 F.3d 34, 63 (1st Cir. 2016).

Setting the patents aside, the Complaint also fails to plausibly allege that generic entry would have occurred in the but-for world without the allegedly unlawful conduct. According to the Complaint, the only generic manufacturer that expressed *any* interest in the drugs at issue is Anobri, a company that has never launched or obtained approval for a product in the U.S. Plaintiff does not allege anything about Anobri's ability to manufacture and sell generics of the Respimat drugs, let alone offer facts showing it would have sold the drugs in the but-for world. Anobri has not received tentative FDA approval for generic Combivent Respimat and Spiriva Respimat—and "[w]ithout tentative FDA approval, [Anobri] could not now enter the market," even if the Orange Book listings and lawsuits did not exist. *Bristol-Myers Squibb Co. v. Copley Pharm., Inc*., 144 F. Supp. 2d 21, 23 (D. Mass. 2000) (dismissing antitrust claim because competitor company had no tentative approval). Because Plaintiff cannot allege a generic manufacturer would have brought generic Combivent Respimat and Spiriva Respimat to market in the but-for world, its claims fail.

***Second***, the "sham" litigation claims also fail because—as a matter of law—Boehringer's lawsuits against Anobri are not "sham" at all. Plaintiff says Boehringer does not have "standing" to sue Anobri because the patents at issue should not be listed in the Orange Book. But Orange Book listing is irrelevant to "standing" to sue to enforce one's patents. Any patentholder can sue any ANDA filer who seeks approval to market a generic version of the patentholder's drug— regardless of whether the patents are listed in the Orange Book. *See AstraZeneca Pharms. LP v.*

*Apotex Corp.*, 669 F.3d 1370, 1377 (Fed. Cir. 2012).  Plaintiff's argument that Boehringer could not have sued Anobri but-for the Orange Book listings is wrong as a matter of law.

Regardless, even under its flawed standing theory, Plaintiff fails to allege the lawsuits were objectively baseless—as it must to establish "sham" litigation—as opposed to constitutionally protected petitioning activity under the *Noerr-Pennington* doctrine.  Boehringer had reasonable grounds to believe its Orange Book listings were appropriate when it sued Anobri.  The Federal Circuit has held that "a patent must be listed if it contains a product claim that reads on the drug that is the subject of the NDA."  *Apotex, Inc. v. Thompson*, 347 F.3d 1335, 1344 (Fed. Cir. 2003). And a patent claim "reads on" a device when all limitations described in the claim are "found in" the device.  *Allen Eng'g Corp. v. Bartell Indus., Inc.*, 299 F.3d 1336, 1345 (Fed. Cir. 2002).  Here, the claims of the Respimat patents are all "found in" and thus "read on" the Respimat inhaler—so they likewise are "found in" and "read on" the Combivent Respimat and Spiriva Respimat drugs, which are combination drugs composed of the compounds *and* inhaler.  Plaintiff points to a First Circuit case, *In re Lantus Direct Purchaser Antitrust Litig.*, 950 F.3d 1 (1st Cir. 2020), which it says precludes the listing of *any* device patent—even when the patent claims read on the drug.  But Boehringer's patent suits against Anobri are appealable to (and controlled by) the Federal Circuit. Because, under Federal Circuit law, Boehringer was *required* to list its patents, Plaintiff cannot allege that decision was so baseless as to make Boehringer's suit a "sham."

***Third***, Plaintiff has failed to adequately plead many of the numerous state law causes of action it asserts on behalf of itself and the putative class of indirect purchasers it seeks to represent.

## II.   BACKGROUND

### A.   FDA Approval and The Hatch-Waxman Process

To obtain FDA approval of a new drug, a drug manufacturer must submit a "new drug application" or "NDA," which "must include, among other things, a statement of the drug's

components, scientific data showing that the drug is safe and effective, and proposed labeling describing the uses for which the drug may be marketed." *Caraco Pharm. Lab's, Ltd. v. Novo Nordisk A/S*, 566 U.S. 399, 404 (2012) (citing 21 U.S.C. § 355(b)(1), (d)). The drug manufacturer is also "required to file with the FDA the number and expiration date of any patent which claims the drug that is the subject of the application." *Eli Lilly & Co. v. Medtronic, Inc*., 496 U.S. 661, 677 (1990); 21 U.S.C. § 355(b)(1)(A)(viii). These patents are then listed in the "Orange Book." The Orange Book "facilitate[s] the approval of generic drugs as soon as patents allow," by giving notice of what patents cover a drug and when they expire. *Caraco*, 566 U.S. at 405.

After the FDA approves a drug, other companies may seek permission to market generic versions of the drug through a process set out in the "Hatch-Waxman Amendments" to the Food and Drug Act. *Id.* These amendments allow a generic manufacturer to file an *Abbreviated* NDA (or "ANDA") and avoid having to replicate the expensive safety and efficacy studies that must accompany an NDA. *Id.* "If the ANDA establishes both that the active ingredient in the proposed drug product is the same as the active ingredient in the previously approved drug and that the proposed product is bioequivalent to the approved drug, the ANDA applicant may rely on the safety and effectiveness data contained in the original NDA." *Apotex*, 347 F.3d at 1338.

Filing an ANDA for a drug constitutes an "act of infringement," so a drug manufacturer can sue an ANDA filer if it merely "alleges that another's filing of an ANDA infringes its patent." *Vanda Pharms. Inc. v. W.-Ward Pharms. Int'l Ltd.*, 887 F.3d 1117, 1124 (Fed. Cir. 2018). In addition, if patents claiming the drug are listed in the Orange Book, the ANDA filer must make a "certification" explaining whether its generic drug will infringe a valid, unexpired patent. "When no patents are listed in the Orange Book or all listed patents have expired … , the generic manufacturer simply certifies to that effect." *Caraco*, 566 U.S. at 406. Otherwise, the ANDA filer

must either (1) certify it will not market the drug until the relevant patents expire (a "paragraph III" certification,); or (2) certify the listed patents are "invalid or will not be infringed by" the ANDA drug (a "paragraph IV" certification). *See* 21 U.S.C. § 355(j)(2)(A)(vii)(III) & (IV).

If the ANDA filer makes a "paragraph IV" certification and the pioneer drug manufacturer files suit against the ANDA filer within 45 days, final approval of the ANDA is stayed for 30 months, or earlier, if the ANDA filer prevails in court.  21 U.S.C. § 355(j)(3)(C).  But regardless of whether a suit is filed, the FDA must review the ANDA "within 180 days and state whether it is approvable." *Bristol-Myers Squibb*, 144 F. Supp. 2d at 23 (citing 21 U.S.C. § 355(j)(5)(A); 21 C.F.R. § 314.100).  As the Complaint acknowledges, "if an ANDA is ready for approval before [the 30-month stay expires], the FDA may grant 'tentative approval' … [which] is warranted when an application satisfies all scientific and procedural conditions to final approval," even if a stay is in place.  FAC ¶ 136; *Bristol-Myers Squibb*, 144 F. Supp. 2d at 23.

**B.     Boehringer Obtains Approval of Combivent Respimat and Spiriva Respimat Drugs**

In 2011, Boehringer obtained approval from the FDA for a new drug to treat COPD known as "Combivent Respimat," a combination drug composed of: (1) a mixture of ipratropium bromide and albuterol, and (2) the Respimat inhaler.  FAC ¶¶ 179-180; COMBIVENT RESPIMAT, Approved Labeling, https://tinyurl.com/ycxw46ec ("COMBIVENT RESPIMAT consists of a COMBIVENT RESPIMAT inhaler" and the compounds).[2]  The FDA subsequently approved Spiriva Respimat—a combination drug composed of tiotropium bromide and the Respimat inhaler—in 2014.      FAC ¶ 188; SPIRIVA RESPIMAT, Approved Labeling, https://tinyurl.com/2359weux ("SPIRIVA RESPIMAT consists of a SPIRIVA RESPIMAT

---

[2] The Court may take "judicial notice of information on the FDA's website." *See Pietrantoni v. Corcept Therapeutics Inc*., 640 F. Supp. 3d 197, 205 (D. Mass. 2022); *In re Asacol Antitrust Litig.*, 2016 WL 4083333, at *7 n.7 (D. Mass. July 20, 2016) (relying on FDA website at motion to dismiss stage).

inhaler" and compounds).

The Respimat inhaler is protected by several patents.  FAC ¶ 185.  After Combivent Respimat and Spiriva Respimat were approved, Boehringer submitted patents for the drugs to the FDA for Orange Book listing.  *Id.* ¶ 191.  The Complaint alleges these patents were "device patent[s]" claiming all or part of the Respimat inhaler.  *Id.*  As of today, six of the listed Respimat patents have not expired: the 7,284,474 patent (expires 8/26/2024); 7,396,341 patent (expires 10/10/2026); 7,837,235 patent (expires 3/13/2028); the 7,896,264 patent (expires 5/26/2025); the 8,733,341 patent (expires 6/7/2030); and the 9,027,967 patent (expires 3/31/2027).  FAC Appx's A, B.  The Complaint alleges two claims of the '3,341 patent are invalid (*id.* ¶¶ 405, 415), but does not dispute the validity of the '3,341 patent's other claims or any claims of the five other patents.[3]

## C.    Anobri Files ANDAs, And Boehringer Brings Suit

The Complaint does not allege any generic manufacturer expressed interest in Combivent Respimat or Spiriva Respimat until March 2023, when Anobri submitted ANDAs for generic versions of the drugs.  FAC ¶ 606.  Anobri made "paragraph IV" certifications with regard to Boehringer's listed patents, and notified Boehringer in May 2023.  *Id.* ¶¶ 608–09.  On June 29, 2023, Boehringer filed two suits against Anobri in the District of New Jersey (one suit for each drug), asserting the six unexpired Respimat patents.  *Id.* ¶¶ 611–12.  Because Boehringer filed suit within 45 days of receiving notice of the paragraph IV certifications, *final* FDA approval of Anobri's ANDAs has been stayed.  The FDA is still free to grant *tentative* approval, but the Complaint does not allege Anobri has received tentative approval for either of its ANDAs (and, some seventeen months after Anobri filed its ANDAs, it still has not received tentative approval).[4]

---

[3] The patents themselves are attached to Boehringer's complaints against Anobri, which are subject to judicial notice here.  *See* No. 2:23-cv-03531 (D.N.J.), ECF 1, Exs. B–G; *infra* n.6 (documents filed in other cases subject to notice).
[4] *See* https://www.accessdata.fda.gov/scripts/cder/daf/index.cfm (click "Drug Approval Reports by Month," then click "Tentative ANDA Approvals by Month" for any month since the ANDAs were submitted in March 2023).

**D.      Plaintiff's Lawsuit**

Plaintiff filed this suit on March 6, 2024, and amended its complaint on May 9, 2024. Plaintiff claims it is an ERISA plan that has paid for some of its members to purchase Combivent Respimat and Spiriva Respimat from pharmacies (FAC ¶ 21), and alleges it has been injured because Boehringer suppressed generic competition for Combivent Respimat and Spiriva Respimat by listing its Respimat patents in the Orange Book and filing "sham" litigation against Anobri. *E.g.*, *id.* ¶¶ 19, 704.  Plaintiff brings numerous state law claims (and a claim for injunctive relief under the Sherman Act), all based on this conduct.  *See id.* ¶¶ 701–852.

### III.      ARGUMENT

**A.      Plaintiff Does Not Allege Causation and Antitrust Injury**

Plaintiff alleges that Boehringer violated antitrust and unfair competition laws by listing six device patents in the Orange Book for Combivent Respimat and Spiriva Respimat, and using its listings as a basis for bringing patent lawsuits against Anobri.  *See* FAC ¶¶ 16-19.  Boehringer's listings were appropriate, as explained below (see *infra* Section B).  Regardless, Plaintiff still could not show antitrust injury, because it does not and cannot plausibly allege that a generic version of Combivent Respimat or Spiriva Respimat would have been brought to market in the absence of the alleged misconduct.  This is fatal to *all* of Plaintiff's claims.

**1.      Plaintiff Must Plausibly Allege That But-For the Allegedly Anticompetitive Conduct, It Would Not Have Been Harmed.**

All of Plaintiff's claims fail unless it can allege facts showing that the alleged anticompetitive conduct caused its injury.  *Sullivan v. Nat'l Football League*, 34 F.3d 1091, 1103 (1st Cir. 1994) ("An antitrust plaintiff must prove that he or she suffered damages from an antitrust violation and that there is a causal connection between the illegal practice and the injury.").  The requirement that an antitrust plaintiff show anticompetitive conduct caused its harm applies to both

Sherman Act claims and claims brought under state antitrust laws, like the state antitrust laws invoked by Plaintiff here. *See, e.g.*, *In re Asacol Antitrust Litig.*, 2016 WL 4083333, at *7 (D. Mass. July 20, 2016) (dismissing state law antitrust claims for lack of causation).

Although Plaintiff also brings consumer protection claims and unjust enrichment claims, these claims are based entirely on the allegation that Boehringer violated the antitrust laws. *See, e.g.*, FAC ¶¶ 753, 758, 760; *id.* ¶¶ 837–42. Plaintiff's failure to plead antitrust injury and causation therefore dooms Plaintiff's consumer protection and unjust enrichment claims as well. *See RSA Media, Inc. v. AK Media Grp., Inc.*, 260 F.3d 10, 16 (1st Cir. 2001) (failure to show "causation with respect to the antitrust claim" doomed unfair practices claim as well); *see also Breiding v. Eversource Energy*, 344 F. Supp. 3d 433, 459 (D. Mass. 2018) ("consumer protection and unfair competition statutes" require "causal connection between … wrongful conduct and … injury").

### 2. Plaintiff Does Not Allege That Any Generic Firm Could Have Launched Without Infringing Boehringer's Patents

Plaintiff cannot claim that Boehringer's alleged listing scheme prevented generic competition, because it cannot show generic Combivent Respimat or Spiriva Respimat could have been sold without infringing Boehringer's patents. *Nexium*, 842 F.3d at 63 (patent "interfere[s] with the plaintiffs' chain of causation: a valid patent independently precludes competition … and an 'at risk' launch is unlawful absent a later finding of patent invalidity or non-infringement.").

If a generic drug is not able to launch because launching would infringe a patent, then the "injury (if it could still be called that) would be caused not by the [alleged misconduct] but by the patent laws prohibiting the launch." *In re Wellbutrin XL Antitrust Litig. Indirect Purchaser Class*, 868 F.3d 132, 165 (3d Cir. 2017). Therefore, for Plaintiff to state a claim against Boehringer, it needed to allege facts showing "that the brand-name's patents would have been declared invalid or that an at-risk launch would not have infringed the patents." *Nexium*, 842 F.3d at 63; *In re*

*Solodyn (Minocycline Hydrochloride) Antitrust Litig*., 2018 WL 563144, at *13 (D. Mass. Jan. 25, 2018) ("To succeed on an at-risk launch theory, Plaintiffs must show that Impax could have launched at-risk lawfully, i.e., without infringing any lawful patent").  Because only one valid patent cuts the chain of causation, Plaintiff must plead facts showing "all" of Boehringer's relevant patents are either invalid or would not be infringed by a generic.  *Mayor & City Council of Baltimore v. AbbVie Inc*., 42 F.4th 709, 713 (7th Cir. 2022) (antitrust claims failed when plaintiffs did not allege generic competitor would not infringe *any* valid patent).

Plaintiff has not done that.  Plaintiff acknowledges that Boehringer has six unexpired patents that claim the Respimat device (*see* FAC ¶ 9 ("Boehringer obtained patents claiming this Respimat device"); *id.* ¶ 185 (alleging Boehringer holds "several patents claiming that inhaler")), and Plaintiff does not allege that five of those six patents are invalid in any way (and only challenges the validity of two claims for the sixth patent).  *See id.* ¶ 408.

Plaintiff also does not allege there was a way for a generic manufacturer to launch generic Combivent Respimat or Spiriva Respimat without infringing Boehringer's valid Respimat patents.  To the contrary, Plaintiff claims that a generic manufacturer (Lupin, Inc.) may have wanted to make a generic of one of the two Boehringer products, Spiriva Respimat, but was prevented from doing so by "the patents protecting the Respimat inhaler."  *Id.* ¶ 643.  But that allegation proves that it was "the patents protecting the Respimat inhaler" (*id.*), and not some allegedly unlawful Orange Book listing, that blocked generic entry.  Indeed, Plaintiff has not even *tried* to allege that a manufacturer could bring generic Combivent Respimat or Spiriva Respimat to market without infringing Boehringer's patents.

Plaintiff's failure to plead that a generic manufacturer could have brought a product to market without infringing Boehringer's patents is fatal to its claims, as illustrated by the Seventh

Circuit's decision in *AbbVie Inc.* (*Humira*).  There, the plaintiffs alleged that AbbVie created a "patent thicket" protecting its drugs, and asserted patents in its "thicket" against generic competitors.  42 F.4th at 712.  The plaintiffs complained the patents in the thicket were "weak and subject to challenge," and alleged the "thicket" and AbbVie's assertion of patents deterred competition.  *Id.*  But the district court dismissed the plaintiffs' claims—and the Seventh Circuit affirmed—because the plaintiffs had not alleged facts showing a generic manufacturer could bring a product to market without infringing at least one of AbbVie's valid patents.  *In re Humira (Adalimumab) Antitrust Litig.*, 465 F. Supp. 3d 811, 844 (N.D. Ill. 2020), *aff'd* 42 F.4th 709 (7th Cir. 2022).  Because the plaintiffs had "not offered to prove that all 132 patents [in the 'thicket'] are invalid or inapplicable" to potential generic competitors, they had failed to plead antitrust standing—as the valid patents presumptively block competition.  *Humira*, 42 F.4th at 712-13.

Here, too, Plaintiff has not "offered to prove" that all six of Boehringer's patents are "invalid or inapplicable" to Anobri or another generic competitor.  *Id.*  Because Plaintiff has not alleged that Boehringer's "patents would have been declared invalid or that an at-risk launch would not have infringed the patents," its claims fail.  *Nexium*, 842 F.3d at 63.

### 3.    Plaintiff Does Not Allege Any Generic Was Prepared To Enter, Let Alone Launch "At Risk"

Even setting aside the patent barrier, Plaintiff cannot claim antitrust injury because it has not alleged facts showing that, but-for the Orange Book listings and litigation against Anobri, a generic manufacturer would have been ready and able to bring a generic version of Combivent Respimat or Spiriva Respimat to market and launched "at risk" in the face of Boehringer's patents.  *See Indium Corp. of Am. v. Semi-Alloys, Inc*., 781 F.2d 879, 882 (Fed. Cir. 1985) (no antitrust injury because competitor "was not prepared to manufacture" the product); *Hecht v. Pro-Football, Inc.*, 570 F.2d 982, 994 (D.C. Cir. 1977) ("[A] potential competitor cannot … merely …

demonstrat[e] his intention to enter a field; he must also demonstrate his preparedness to do so.").

To meet its burden, Plaintiff "must plead that [a generic competitor] intends to enter the market, that it is prepared to enter the market, and that it would have entered the market by now but for [Boehringer's] conduct." *Aventis Pharma S.A. v. Amphastar Pharms., Inc.*, 2009 WL 8727693, at \*14 (C.D. Cal. Feb. 17, 2009) (dismissing antitrust claims where generic competitor had not pleaded it was ready to enter). Here, Plaintiff has not shown that any generic competitor would have entered the market in the but-for world. Plaintiff identifies only one generic that has expressed *any* interest in these drugs: Anobri, which submitted ANDAs for Combivent Respimat and Spiriva Respimat in March 2023. FAC ¶¶ 606–08. But Plaintiff does not allege Anobri has done anything to prepare to launch its generics or that it has the capacity to do so. The Complaint says nothing about Anobri, its background or experience in inhaler products or COPD, its financial capacity to enter, any steps it has taken to manufacture a generic version of either product, or any other facts that show it would compete in any relevant markets. *See Hecht*, 570 F.2d at 994 ("Indicia of preparedness include adequate background and experience in the new field, sufficient financial capability to enter it, and the taking of actual and substantial affirmative steps toward entry, 'such as the consummation of relevant contracts and procurement of necessary facilities and equipment.'") (footnote and citation omitted). In fact, the Court can take judicial notice that Anobri has *never* received FDA approval for *any* drug. *See* FDA Approved Drug Products, https://www.accessdata.fda.gov/scripts/cder/ob/index.cfm (select "Applicant," enter "Anobri"; then submit). The absence of any allegations that Anobri is prepared to enter warrants dismissal.

Equally fatal to the Complaint is that it lacks any allegation that Anobri (or any other firm) would have launched "at risk" in the face of Boehringer's patents if they were not listed in the Orange Book. *In re Wellbutrin XL Antitrust Litig.*, 133 F. Supp. 3d 734, 765 (E.D. Pa. 2015)

("plaintiffs must show … that [the generic competitor] *had the ability and intent to launch at risk*") (emphasis added).  Nor would any such allegations be plausible, given Plaintiff's own allegations that generic manufacturers are deterred from launching at risk by the potential for "ruinous money damages."  FAC ¶¶ 13, 48 (without Orange Book listings, companies were so concerned with liability they "waited until they were certain they could no longer be sued" before selling generic).[5]

Tellingly, Plaintiff does not even allege that Anobri has obtained "tentative approval" from the FDA for its generics.  Tentative approval would mean that Anobri's ANDA meets all the requirements for approval except for regulatory or patent exclusivity.  *See* 21 C.F.R. §§ 314.105(d).  Yet Plaintiff does not and cannot allege the FDA has granted such tentative approval.

This is an independent bar to Plaintiff's claims.  As explained in *Bristol-Myers Squibb*, a plaintiff cannot complain that drug competition has been suppressed when the only alleged potential competitor has not received tentative approval, because "[w]ithout tentative FDA approval, [the competitor] could not now enter the market, regardless" of the allegedly unlawful conduct.  144 F. Supp. 2d at 23; *In re Terazosin Hydrochloride Antitrust Litig.*, 335 F. Supp. 2d 1336, 1368 (S.D. Fla. 2004) ("[I]f the ANDA applicant has not even received tentative FDA approval, there can be no causal connection between [misconduct] and … antitrust injury.").

Because Plaintiff has not alleged that Anobri—or any other generic—has obtained tentative FDA approval or even prepared to enter the market, they cannot allege that Boehringer's purported misconduct prevented generic entry.  For that reason, too, all their claims fail.

## B.   Plaintiff Fails to Plausibly Plead that Boehringer Engaged in Sham Litigation

Plaintiff's "sham litigation" claims also fail for two separate reasons.  *First*, Plaintiff's "sham" theory is based on its assertion that Boehringer's "standing" to sue Anobri derives from

---

[5] Of course, even a hypothetical, unpled at-risk launch leads right back into the problem explained above: Boehringer's patents.  Plaintiff must show an at-risk launch "would have been legal."  *Wellbutrin*, 868 F.3d at 165.

its listing of the patents at issue in the Orange Book.  But this is wrong as a matter of law—a manufacturer that holds patents for a drug can sue an ANDA filer regardless of whether the patents are listed.  *Second*, even if Plaintiff were right that "standing" derives from an Orange Book listing (and it does not), Boehringer's suits against Anobri are constitutionally protected activity under the *Noerr-Pennington* doctrine.  Plaintiff does not allege that the lawsuits were either objectively or subjectively baseless, as is necessary to meet the "sham" litigation exception to such immunity.

### 1.    The Orange Book Listings Are Not Necessary For "Standing"

Plaintiff does not allege that the patents Boehringer asserted against Anobri are invalid or not infringed.  Instead, Plaintiff claims that "Boehringer's ***standing*** is founded on having listed its device patents in the Orange Book" (FAC ¶ 619 (emphasis added)), and that because the patents were allegedly improperly listed, Boehringer had no "standing" to sue Anobri.  *Id.* ¶¶ 619, 623.

This theory fails, because Boehringer's standing did not depend on the Orange Book at all—rather, Boehringer had standing because it alleged the ANDAs infringed its patents.  *See id.* ¶¶ 611–612 (acknowledging that Boehringer alleged the ANDA infringed its patents).  The Federal Circuit has held that "the requirements for jurisdiction in the district courts are met once a patent owner alleges that another's filing of an ANDA infringes its patents …."  *AstraZeneca*, 669 F.3d at 1377; *Vanda*, 887 F.3d at 1124 (all that is required is "alleg[ing] that [the defendant] infringed … by filing the ANDA.").  Relying on this authority, numerous courts have rejected Plaintiff's argument—and held that "there is no requirement … that a patent must be listed in the Orange Book in order for a drug manufacturer to bring an infringement action based on that patent against an ANDA applicant."  *Takeda Pharm. Co. v. TWi Pharms., Inc.*, 2013 WL 12164680, at *21 (N.D. Cal. May 20, 2013) (collecting cases).

Plaintiff cites a single case for the contrary proposition that a "brand company that [does] not list [a] patent in [the] Orange Book cannot sue pursuant to § 271(e)(2)(A)."  *See* FAC ¶ 622 n.

83 (citing *Abbott Labs. v. Zenith Labs., Inc.*, 1995 WL 117984, at *12 (N.D. Ill. Mar. 16, 1995)). That case has been repudiated by the same district court that rendered the decision.  *See Teva Pharms. USA, Inc. v. Abbott Lab'ys*, 301 F. Supp. 2d 819, 830 (N.D. Ill. 2004) ("the court declines to adopt the reasoning in *Zenith*").  And that case was issued in 1995—long before the Federal Circuit made clear in 2012 that the only jurisdictional requirement is to allege "that another's filing of an ANDA infringes [a] patent."  *AstraZeneca*, 669 F.3d at 1377; *Takeda*, 2013 WL 12164680, at *20 ("The Federal Circuit subsequently resolved any doubt on this issue in *AstraZeneca* ....").

In short, Plaintiff's sham litigation theory is wrong as a matter of law.  Even if Boehringer had not listed its patents in the Orange Book, Boehringer still would have had standing to sue Anobri immediately upon the filing of Anobri's ANDAs.  Because Plaintiff's sham litigation claims are grounded on a legal falsehood—that Boehringer could not have sued Anobri absent the allegedly improper Orange Book listings—they should be dismissed.

## 2.    Boehringer's Suits Against Anobri Are Protected by *Noerr-Pennington*

Even if Plaintiff were right to allege that Boehringer's "standing" depends on the Orange Book listing (and it is not), the sham litigation claims would still fail because Boehringer's suits against Anobri are constitutionally protected from liability by the *Noerr-Pennington* doctrine.

"Under the *Noerr–Pennington* doctrine, filing a lawsuit is protected under the First Amendment unless the lawsuit is a 'sham.'" *In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*, 2015 WL 5458570, at *11 (D. Mass. Sept. 16, 2015) (citing *Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.* (*PRE*)*,* 508 U.S. 49, 56, 60–61 (1993)).  "To plead the sham litigation exception, a plaintiff must allege that the lawsuit was (1) 'objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits'; and (2) subjectively motivated by a desire to 'interfere *directly* with the business relationships of a competitor, through the use of the governmental *process*—as opposed to the *outcome* of that

process—as an anticompetitive weapon.'" *Solodyn*, 2015 WL 5458570, at *11 (quoting *PRE*, 508

U.S. at 60–61) (emphases in original).  Plaintiff must allege facts supporting "both prongs of the

test." *United Food & Com. Workers Unions Fund v. Novartis*, 902 F.3d 1, 13 (1st Cir. 2018).

Here, Plaintiff has not and cannot plead that Boehringer's suits were "objectively baseless"

or "subjectively motivated" by a desire to use the process of litigation to suppress competition.

### a.      Plaintiff Does Not Plausibly Plead Objective Baselessness

Plaintiff cannot plausibly allege Boehringer's suits against Anobri are objectively baseless,

even under its flawed standing theory.  Plaintiff says the First Circuit's decision in *Lantus* holds

that device patents, like Boehringer's Respimat patents, cannot be listed in the Orange Book.  *See*

FAC ¶ 83.  But even assuming that is a correct interpretation of *Lantus*, that is insufficient as a

matter of law to allege Boehringer's decision to file suit was objectively baseless, for two reasons.

***1. Anobri Has Never Argued Boehringer Lacks Standing.***  Anobri has not argued that

Boehringer lacks standing to bring its suits, and has even *admitted* that the court in those suits has

jurisdiction.  *See* No. 2:23-cv-03530 (D.N.J.), ECF 22 at 6; No. 2:23-cv-03531 (D.N.J.), ECF 22

at 6.[6]  Plaintiff cannot allege Boehringer lacks standing when Anobri has never claimed that.

The *AbbVie/Humira* litigation is on point.  In that suit, the plaintiffs argued that AbbVie's

patent suits against various generic manufacturers were shams.  *See In re Humira (Adalimumab)*

*Antitrust Litig.*, 465 F. Supp. 3d 811, 828 (N.D. Ill. 2020).  But the patent suits settled without any

ruling they were meritless, and the Seventh Circuit held the plaintiffs could not show a lawsuit was

baseless by raising arguments that were never adjudicated in the underlying suits themselves: "a

separate antitrust suit by strangers to the patent litigation does not justify an effort to adjudicate by

proxy what might have happened in the patent litigation, but didn't."  *Humira*, 42 F.4th at 714.

---

[6] "[D]ocuments on file in federal or state courts are proper subjects of judicial notice."  *AES Puerto Rico, L.P. v. Trujillo-Panisse*, 133 F. Supp. 3d 409, 415 (D.P.R. 2015) (collecting cases).

Here, too, Plaintiff cannot seek to "adjudicate by proxy" a standing argument Anobri has not raised.

  ***2. There Is No Controlling Adverse Authority.*** Plaintiff's sham theory also fails because caselaw from the Federal Circuit—which will hear any appeal from the *Anobri* case—supports Boehringer's listing decision.  At worst, the law is unclear, which is not enough for baselessness.

  A suit is not objectively baseless unless a reasonable person would not have believed the suit had *any* "likelihood of success." *PRE*, 508 U.S. at 65.  The Supreme Court has likened this to the Rule 11 standard, explaining a lawsuit is not objectively baseless if the "action was arguably 'warranted by existing law' or at the very least was based on an objectively 'good faith argument for the extension, modification, or reversal of existing law.'" *Id.* (quoting Fed. R. Civ. Proc. 11). A suit cannot be objectively baseless unless clear, binding precedent ***forecloses*** it; a litigant can press a claim "[e]ven in the absence of supporting authority." *Id.*  Thus, in *PRE*, the Supreme Court held a suit was not objectively baseless—even though it was unsuccessful—when the law was "unsettled" and no binding precedent prohibited the suit when it was brought. *Id.* at 64–65.

  Here, no binding precedent holds that Boehringer's listing decision was incorrect.  Any appeal in the *Anobri* litigation will go to the Federal Circuit, which hears all appeals in patent suits. 28 U.S.C. § 1295(a)(1).  If the propriety of Boehringer's Orange Book listings were raised in *Anobri*, the Federal Circuit would apply its own law to the question of whether Boehringer properly listed the patents. *Jazz Pharms., Inc. v. Avadel CNS Pharms., LLC*, 60 F.4th 1373, 1379 (Fed. Cir. 2023) (Orange Book listing governed by Fed. Cir. precedent).  While Plaintiff says the First Circuit's *Lantus* decision prohibits listing device patents, *Lantus* does not control the *Anobri* suits. The absence of adverse controlling authority, alone, is dispositive of the sham litigation claims.

  In any event, Federal Circuit authority supports Boehringer.  Federal Circuit precedent holds that "a patent must be listed if it contains a product claim that reads on the drug that is the

subject of the NDA." *Apotex*, 347 F.3d at 1344.  Determining what constitutes "the drug that is the subject of the NDA" (*id.*) requires looking at the NDA itself: "it is the scope of the NDA that is pertinent to Orange Book listing." *Andrx Pharms., Inc. v. Biovail Corp.*, 276 F.3d 1368, 1376 n.4 (Fed. Cir. 2002).  And a patent claim "reads on" a device (like a drug in an NDA) when the limitations in the claim are all "found in" the device, even if additional elements are present.  *See, e.g.*, *Allen*, 299 F.3d at 1345; *Stiftung v. Renishaw PLC*, 945 F.2d 1173, 1178 (Fed. Cir. 1991).

Here, the drugs that are the subject of the NDAs are Combivent Respimat and Spiriva Respimat, which are described in the NDAs as combination drugs composed of active ingredients *and* the Respimat inhaler.  *See supra* pp. 6–7.  The Respimat inhaler is thus a part of the drug for which Boehringer sought and obtained approval.  And, as Plaintiff admits, the listed patents each "claim[] th[e] Respimat device," as each patent claims integral elements of the Respimat inhaler.  FAC ¶¶ 9, 643.  While Combivent Respimat and Spiriva Respimat also contain *other* elements (i.e., compounds) not described in the Respimat patents, the Respimat patent claims still "read on" the combination drugs.  *Allen*, 299 F.3d at 1345; *Stiftung*, 945 F.2d at 1178.  Boehringer's Orange Book listings are supported by Federal Circuit precedent, and are not objectively baseless.

### b.   Plaintiff Does Not Plead Facts Showing Subjective Bad Faith

Plaintiff also does not plausibly plead that Boehringer brought its patent suits in subjective bad faith.  *PRE*, 508 U.S. at 65.  Plaintiff simply asserts "Boehringer did not sue Anobri in a good faith effort to protect … intellectual property."  FAC ¶¶ 634-35.  Plaintiff cannot plead a sham claim with such "conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Adobe Sys. Inc. v. Coffee Cup Partners, Inc.*, 2012 WL 3877783, at *7, *9 (N.D. Cal. Sept. 6, 2012); *Nader v. The Democratic Nat. Comm.*, 555 F. Supp. 2d 137, 158–61 (D.D.C. 2008).

## C.   Plaintiff Has Failed To Plead Many Of Its State Law Claims

Even setting aside these fundamental defects, Plaintiff has failed to plead essential elements

of many state law claims it purports to bring.  Those claims should be dismissed.

1.      **Defectively Pleaded State Law Antitrust Claims**

Plaintiff brings state law antitrust claims in Counts I, II, III, IV, VII, IX, X, and XI of the

Complaint, but these Counts are defectively pleaded under the following states' laws:

*Illinois*.  The Illinois Antitrust Act does not permit indirect purchasers to bring antitrust

class action claims.  *E.g.*, *Solodyn*, 2015 WL 5458570, at *17 (dismissing Illinois antitrust claim).

*Montana and New Jersey*.  Indirect purchasers are barred from recovering damages in

these states.  *Miami Prod. & Chem. v. Olin Corp.*, 546 F. Supp. 3d 223, 237, 246 (W.D.N.Y. 2021).

*Massachusetts and Mississippi*.  Plaintiff does not allege any wholly *intrastate* conduct by

Boehringer in these states.  *Iron Workers v. Teva*, 2024 WL 2025572, at *9 (D. Mass. May 7, 2024).

*Utah*.  Plaintiff is not a citizen or a resident of Utah.  *See In re Nexium (Esomeprazole)*

*Antitrust Litig.,* 968 F. Supp. 2d 367, 410 (D. Mass. 2013).

2.      **Defectively Pleaded Consumer Protection Claims**

Plaintiff has also failed to properly plead the consumer protection claims (Counts V, VI,

VII, XII, XIII, and XIV) under the following states' laws:

*Arkansas, Illinois,*[7] *Maryland, and Utah*.  These states' consumer protection statutes do

not apply in the antitrust context.  *Iron Workers*, 2024 WL 2025572, at *10-11 (Ill., Ark., Utah); *In*

*re New Motor Vehicles Exp. Antitrust Litig.*, 350 F. Supp. 2d 160, 188 (D. Me. 2004) (Maryland).

*New Jersey and Oklahoma*. These states do not provide for consumer protection claims

based on antitrust allegations by indirect purchasers.  *New Motor*, 350 F. Supp. 2d at 194-95, 200.

*Massachusetts*. Massachusetts consumer protection law does not apply to indirect

purchaser antitrust claims.  *See Asacol*, 2016 WL 4083333, at *13 (dismissing analogous claims).

---

[7] The Illinois state consumer protection claims must also be dismissed because the statute does not permit consumer protection class actions.  *See Loestrin*, 410 F. Supp. 3d at 371.

***Indiana, Maryland, South Dakota, Vermont, and Wyoming***.  Plaintiff has not alleged that it *relied* on some statement or conduct by Boehringer, as is required under these state laws.[8]

### 3. Defectively Pleaded Unjust Enrichment Claims

The unjust enrichment claims under Alabama, Florida, New York, North Carolina, Michigan, North Dakota, and Ohio law fail because the tort of unjust enrichment in those states requires the conferral of a direct benefit from the plaintiff to the defendant, which Plaintiff—an indirect purchaser that did not purchase *directly* from Boehringer—has not pleaded.

Under **Alabama** law, plaintiffs cannot bring unjust enrichment claims if "they never paid money directly to the Defendant." *In re Atlas Roofing Corp.*, 2018 WL 2929831, at *6 (N.D. Ga. June 8, 2018).  **Florida** law also requires a direct benefit.  *See, e.g.*, *In re Flonase Antitrust Litig.*, 692 F. Supp. 2d 524, 544 (E.D. Pa. 2010).  Indirect purchasers of drugs cannot bring an unjust enrichment claim under **New York** law.  *Sheet Metal Workers Loc. 441 v. GlaxoSmithKline, PLC*, 737 F. Supp. 2d 380, 441 (E.D. Pa. 2010).  **North Carolina** requires that the plaintiff "directly conferred a benefit on the defendant." *Flonase*, 692 F. Supp. 2d at 545.  **Michigan** also requires a direct benefit by the plaintiff, not a benefit "conferred by a third party." *In re Gen. Motors LLC*, 257 F. Supp. 3d 372, 427-28 (S.D.N.Y. 2017).  Indirect purchaser allegations fail to establish a "direct benefit" under **North Dakota** law.  *In re DDAVP Indirect Purchaser Litig.*, 903 F. Supp. 2d 198, 235 (S.D.N.Y. 2012).  Unjust enrichment in **Ohio** requires a direct purchase between the plaintiffs and defendants.  *Bower v. IBM, Inc.*, 495 F. Supp. 2d 837, 844-45 (S.D. Ohio 2007).

## IV. CONCLUSION

Plaintiff's Complaint should be dismissed, without leave to amend.

---

[8] Ind. Code § 24-5-0.5-4(a) (reliance required); Vt. Stat. Ann. tit. 9, § 2461 (same); Wyo. Stat. Ann. § 40-12-108 (same); *Hoffman v. Stamper*, 843 A.2d 153, 191 (Md. Ct. Spec. App. 2004), *rev'd in part on other grounds*, 867 A.2d 276 (Md. 2005) (same in Maryland); *In re Ranbaxy Generic Drug Application Antitrust Litig.*, 2019 WL 6341298, at *9 (D. Mass. Nov. 27, 2019) (same in South Dakota).

Dated:  July 18, 2024                    Respectfully submitted,


                                          By: */s/ Michael Bunis*                 

                                              Samuel Liversidge (*pro hac vice*)
                                              Daniel Nowicki (*pro hac vice*)
                                              Nancy Ding (*pro hac vice*)
                                              Gibson, Dunn & Crutcher LLP
                                              333 South Grand Avenue
                                              Los Angeles, CA 90071-3197
                                              Phone: (213) 229-7000
                                              Email: sliversidge@gibsondunn.com

                                              Caeli Higney (*pro hac vice*)
                                              Gibson, Dunn & Crutcher LLP
                                              One Embarcadero Center
                                              Suite 2600
                                              San Francisco, CA 94111-3715
                                              Phone: (415) 393-8200
                                              Email: chigney@gibsondunn.com

                                              Stephen Weissman (*pro hac vice*)
                                              Steve Pet (*pro hac vice*)
                                              John Zippel (pro hac vice)
                                              Gibson, Dunn & Crutcher LLP
                                              1050 Connecticut Avenue, N.W.
                                              Washington, DC 20036-5306
                                              Phone: (202) 955-8678
                                              Email: sweissman@gibsondunn.com
                                              Email: spet@gibsondunn.com

                                              Michael H. Bunis (BBO# 566839)
                                              John B. Lucy, Jr. (BBO# 710083)
                                              Choate, Hall & Stewart LLP
                                              Two International Place
                                              Boston, MA 02110
                                              Phone: (617) 248-5000
                                              Email:  mbunis@choate.com
                                              Email:  jlucy@choate.com

                                              *Attorneys for Defendant Boehringer*
                                              *Ingelheim Pharmaceuticals, Inc. and*
                                              *Boehringer Ingelheim International GmbH*

21

## <u>CERTIFICATE PURSUANT TO LOCAL RULE 7.1</u>

I hereby certify that counsel for Defendants has conferred with counsel for Plaintiffs in a good faith attempt to resolve or narrow the issues that are the subject of this Motion. Plaintiffs oppose this motion.

By:     */s/ Michael Bunis____*

## <u>CERTIFICATE OF SERVICE</u>

I, Michael Bunis, hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on July 18, 2024.


By:  */s/ Michael Bunis_____*

Michael Bunis (BBO# 566839)
Choate, Hall & Stewart LLP
Two International Place
100-150 Oliver Street
Boston, MA 02110
Phone: (617) 248-5000
Email: mbunis@choate.com

*Attorney for Defendants*